

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Paul Holt
County Attorney
Travis County
Austin, Texas

Overruled by
Dickison v.
City of San Antonio,
reported in 349 S. W.
2 d, 640, error ref.
n. r. e.

Dear Sir:                    Attention:  Mr. Wm. Yelderman

Opinion No. O-5290
Re:  Constitutionality of House
Bill No. 635 and Senate Bill
No. 126.

With your letter of May 5 you join in the request
of Mr. S. D. Heffington, Assessor-Collector of Taxes for
Travis County, requesting the opinion of this department on
the constitutionality of House Bill No. 635, and Senate Bill
No. 126, passed by the Legislature, which has just adjourned,
which bills have been approved by the Governor. We quote
Mr. Heffington's letter as follows:

"Will you please advise whether or not the following
bills that were enacted by the present Legislature are
constitutional or not:

"House Bill No. 635,
Senate Bill No. 126,

both of which have been signed by the Governor and carry
an emergency clause making them operative at once. Both
of these bills purport to prorate the taxes on lands
acquired by the United States of America, and particularly
to drop from the tax rolls of Travis County and other coun-
ties, for the year 1943, all of the property which the
Government had possession of, either by contract, condemna-
tion or deed, prior to January 1st, 1943.

"It is claimed by Mr. Hillaire F. Nitschke, Division Closing Attorney, for the War Department, on lands located in Bergstrom Field, here in Travis County, in pursuant to the authority contained in these bills, their office no longer required the payment by the vendor of a sum sufficient to meet the 1943 taxes when they should become payable. However, this legislation was submitted to their office in Washington, and there seems to be some question as to the constitutionality of these bills.

"Since I am directly concerned in the dropping from my tax rolls of the land acquired as a part of the Del Valle Airfield in Travis County, I would appreciate your advising me as to the constitutionality of these two bills.

"I have always held, where the deed had not passed from the seller to the buyer, and duly recorded in the County Clerk's office of the county where the land was situated on the first day of January, say 1943, that the taxes were still due and must be paid."

We deem it desirable to consider these bills separately, hence we first direct our attention to House Bill No. 635. This Act is divided into four sections: Sec. No. 1 is a statement of public policy, No. 2 of legislative intent, and No. 3, which is the heart of the Act, reads as follows:

"That in all counties in this State wherein the United States of America under condemnation proceedings secured possession of lands for the purpose of establishing and enlarging military camps lying in said counties prior to January 1, 1943, under order of the Federal Courts, and as a result thereof the owners of said lands were deprived of the use, occupancy, beneficial title and possession thereof prior to January 1, 1943, that said lands be not placed upon the tax rolls for 1943, and that those officials charged with the duty of placing said lands upon the various tax rolls, and levying and collecting taxes for the year 1943, be and they are hereby authorized to andsshall omit said lands from the tax rolls, and that taxes for 1943 shall not be levied, assessed, or collected against said lands."

Hon. Paul Holt, page 3

In testing the constitutionality of this Act we need be concerned only with the status of the property as of January 1, 1943, for by the specific terms of the Act it is applicable only to the taxable status of property for the year 1943. We are immediately confronted with the question of title and ownership as of January 1, 1943.

For the purpose of this opinion we assume, as we think we must, the correctness of certain declarations of fact recited in the Act, which we note as follows:

". . . Whereas, The United States of America has filed petitions in condemnation in various Federal Courts of this State pursuant to provisions of law in such cases made and provided, . . .

". . . and prior to January 1, 1943, and upon the filing thereof, in keeping with the provisions of law relating to such matters and by order of the Federal Courts, the United States of America took immediate possession of said lands and ejected the owners therefrom;

". . . the owners of said lands were deprived of ownership and title in said lands effective with such possession,

". . .

". . . inasmuch as the equitable and beneficial title to said lands was in the United States of America on January 1, 1943, . . . . that said 1943 taxes be not levied, assessed, or collected upon said lands."

We point out that by the limited scope of the Act, it deals only with title and ownership of land acquired or divested by condemnation proceedings by the United States Government in establishing and enlarging military camps prior to January 1, 1943. This being true we consider the pertinent provisions of Section 258a, Title 40, U. S. C. A., which provides that the Federal Government may, at its option, acquire title to land upon filing in the federal court in which condemnation proceedings are pending a "declaration of taking". This statute reads in part as follows:

Hon. Paul Holt, page 4

"In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. . . .

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America. . . ."

Since the Act deals exclusively with condemnation proceedings filed by the United States Government in federal court, and this Act contemplates, as we think it does, that on January 1, 1943, title and possession had vested in the United States Government by the filing of a "declaration of taking", then on said date the prior private owner whose land is thus sought to be condemned is no longer the owner in the purview of Article 7151, V. A. C. S., which requires:

"All property shall be listed for taxation between January 1 and April 30 of each year, when required by the assessor, with reference to the quantity held or owned on the first day of January in the year for which the property is required to be listed or rendered. . . ."

By virtue of Article 7152, V. A. C. S., the owner of real estate is required to list or render the same for taxation. Should he fail to do so, Article 7205, R. C. S., makes it the duty of the assessor to list and assess the same in "the name of the owner; if unknown say unknown".

Hon. Paul Holt, page 5

Thus in no event would there be a forgiveness or remission of taxes in violation of Article VIII, Section 10, of the Constitution of Texas, which reads as follows:

"The Legislature shall have no power to release the inhabitants of, or property in, any county, city or town, from the payment of taxes levied for State or County purposes, unless in case of great public calamity in any such county, city, or town, when such release may be made by a vote of two-thirds of each house of the Legislature."

this for the obvious reason that on January 1, 1943, the Federal Government had become the owner by virtue of the filing of a "declaration of taking" provided for in Section 258a, Title 40, U. S. C. A., supra.

We are, therefore, constrained to hold that House Bill No. 635 is constitutional. Indeed the same conclusion would be reached under the law independent of this Act. In other words if this Act had not been passed the same conclusion would be reached under existing law without the aid of this Act.

We now pass to a consideration of Senate Bill No. 126, which is an amendment to Article 7151, R. C. S., by adding thereto the following:

"Provided further that if the United States Government or any of its agencies having the power of condemnation shall take over the possession of property under authority of any law authorizing it to condemn said property, or under an option to buy said property from the owner, or under an agreement by the owner to sell said property, or shall comply with the laws relating to condemnation to such an extent as to entitle it to the possession of said property, or to constitute a taking thereof from the owner, or personith whose name title rests, then such condemning authority shall be considered the owner of said property for all the purposes of state and county taxation from the date of taking possession thereof, or from the date of its complying with the condemnation laws to the extent that it is entitled to possession of said property, or from the date it has complied with the condemnation laws to the extent that there has been a taking of said property from the owner, which ever occurs first."

Hon. Paul Holt, page 6

We shall not be able to state more clearly our views than was done in our opinion No. O-4749, which involved a very similar question to the one which you present to us, and for convenience we quote from this opinion as follows:

"Article 7151 of Vernon's Annotated Civil Statutes reads as follows:

"'All property shall be listed for taxation between January 1 and April 30 of each year, when required by the assessor, with reference to the quantity held or owned on the first day of January in the year for which the property is required to be listed or rendered. Any property purchased or acquired on the first day of January shall be listed by or for the person purchasing or acquiring it. If any property has, by reason of any special law, contract or fact, been exempt or has been claimed to be exempted from taxation for any period or limit of time, and such period of exemption shall expire between January 1, and December 31 of any year, said property shall be assessed and listed for taxes as other property; but the taxes assessed against said property shall be for only the pro rata of taxes for the portion of such year remaining.'"

"By Article 7152, V. A. C. S., the owner of real estate is required to list or render the same for taxation. Should he fail to do so, Article 7205, R. C. S., makes it the duty of the Assessor to list and assess the same in 'The name of the owner; if unknown, say "unknown."'

"As to the enforcement of the liability of the taxpayer, Article 7272, V. A. C. S., states as follows:

"'All real and personal property held or owned by any person in this State shall be liable for all State and County taxes due by the owner thereof including tax on real estate, personal property and poll tax; and the Tax Collector shall levy on any personal or real property to be found in his county to satisfy all delinquent taxes, any law to the contrary notwithstanding: . . .'

Hon. Paul Holt, page 7

"By virtue of the provisions of these statutes, the ownership of property on the first day of January creates a personal liability on the part of the owner for taxes for that year, and the sale thereof shortly afterwards does not affect the rule. Humble Oil & Refining Company v. State (Civ. App.), 3 S. W. (2d) 559; Caswell & Co. v. Habbersettle (Civ. App.), 87 S. W. 911; Winters v. Independent School District (Civ. App.), 208 S. W. 574; Childress County v. State (Sup. Ct.), 92 S.W. (2d) 1011; Cranfill Bros. Oil Co. v. State (Civ. App.), 54 S.W. (2d) 813 (error refused); Gerlach Mercantile Co. v. State (Civ. App.), 10 S. W. (2d) 1035 (error refused).

"In the light of the above cited authorities we think taxes should be assessed against the owner as of January 1, 1942, irrespective of the fact that since that date the property has been acquired by the right of eminent domain and is now exempt from taxation by the provisions of Article VIII, Section 2 of the Constitution of Texas, Article 7150, Vernon's Annotated Civil Statutes, and existing governmental immunities.

"As to the available means of collecting an assessment, Article VIII, Section 15 of the Constitution provides:

"'The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the legislature may provide.'

"The tax collector in the collection of delinquent taxes may proceed against any property then belonging to any person who has failed or refused to pay the taxes imposed on him or his property. Masterson v. State (Civ. App.), 42 S. W. 1003; McMahan v. State (Civ. App.), 147 S. W. 714. This personal obligation of the delinquent taxpayer does not affect the special tax lien that is attached to each tract or parcel of land for the taxes assessed against it. Hoffman v. Wood (Civ. App.), 258 S. W. 835; Richey v. Moor (Sup. Ct.), 249 S. W. 172.

Hon. Paul Holt, page 8

"As to the former owners liability for taxes, 40 Texas Jurisprudence, page 104 ( § 70) states the following:

"'Thus if the owner should sell the property before the date on which the tax becomes due he is liable therefor and to any penalties or interest that has accrued, although as between such owner and the purchaser, he may be entitled under the contract of sale to recover over from the purchaser.'

"Article 7172, V. A. C. S., creating a special lien on the property reads:

"'All taxes upon real property shall be a lien upon such property until the same shall have been paid. And should the assessor fail to assess any real estate for any one or more years, the lien shall be good for every year that he should fail to assess for; and he may, in listing property for taxes any year thereafter, assess all the back taxes due thereon, according to the provisions of this title.'

"This lien is not voided by the fact the property may later pass to the United States Government. This question has been decided by the Supreme Court of the United States in the case of United States v. Alabama (1940) 313 U. S. 273, 85 L. Ed. 1327. In the opinion of the court, Mr. Chief Justice Hughes said:

"'That law in creating such liens for taxes subsequently assumed in due course and making them effective as against subsequent purchasers did not contravene the Constitution of the United States and we perceive no reason why the United States albeit protected with respect to proceedings against it without its consent, should stand, so far as the existence of the liens is concerned in any different position from that of other purchasers of land in Alabama who take conveyances on and after the specified tax date. It is familiar practice for grantees who take title in such circumstances to see that provision is made for payment of taxes and the Government could easily have protected itself in like manner.

Hon. Paul Holt, page 9

Finding no constitutional infirmity in the state legislation, we think that the lien should be held valid.'

"The court points out, although a valid lien is created on the property, it cannot be enforced during the time the government holds title to the property as the United States would be an indispensable party to a suit, such as provided by Articles 7326 and 7328, V. A. C. S., and cannot be sued without its permission.

"This does not prevent a lien when properly perfected from remaining a cloud on the title and if title to the property again passes into private ownership it will pass subject to the tax lien which the State may at that time enforce."

In addition to the authorities cited in opinion No. O-4749, from which we have quoted fully, we call attention to a very early case, Fannie M. Cruger v. Williams Ginnuth, reported in Texas Court of Appeals, Civil Cases, 3rd Willson, page 42, from which we quote as follows:

"On January 1, 1882, appellant owned certain real estate in the city of Houston, Texas. On March 22, following, she sold and conveyed the same to R. Colter, T. J. Boyles and appellee. Subsequently, September 14, 1882, Colter and Boyles sold and conveyed their interest in the property to appellee Ginnuth. On July 1, 1882, Colter, Boyles and Ginnuth rendered the property for taxation for the year 1882, the assessment being against, or in the name of, their vendor, Fannie M. Cruger. On June 1, 1883, appellee Ginnuth paid the taxes so assessed for the year 1882, state, county and city — the state and county taxes being $97.50, and the city tax being $300. He then brought this suit to recover of appellant the taxes so paid, and recovered judgment therefor. Held: The question presented is, Were the claims of the state, county and city for the taxes of 1882 incumbrances upon the land? The constitution provides that, 'The annual assessment made upon landed property shall be special lien thereon, and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent.' (Art. 8, Sec. 15.) At the date of the conveyance made by

appellant, the law in force provided as follows:
'There shall be levied and collected an annual direct
ad valorem state tax of four-tenths of one per centum
of the cash value thereof, . . . on all real property
situated . . . in this state on the 1st day of January
of each and every year.' (Gen. Laws of 1881, p. 53)
'All property shall be listed for taxation between
January 1st and June 1st of each year, when required
by the assessor, with reference to the quantity held
or owned on the 1st day of January in the year for
which the property is required to be listed or ren-
dered. Any property purchased or acquired on the
1st day of January shall be listed by or for the
person purchasing or acquiring it.' (R. S. 4674) 'The
collector of taxes of each county shall begin the col-
lection of the taxes on the 1st day of October . . .'
(R. S. Art. 4739.) Under further provisions the tax
roll is not completed, nor the value of the property
listed finally determined, until after the second Monday
in June, and real estate cannot be seized and sold for
unpaid taxes due thereon until March following. Unques-
tionably under the provisions of the laws cited, appel-
lant, being the owner of the land on the 1st day of
January, 1882, was liable personally for the taxes
thereon for that year, though the amount of such taxes
was to be subsequently ascertained, and though collection
could not be made thereof before October; for the law
expressly provides that the taxes shall be charges against
the person owning the property on January 1st. From this
it follows that appellee Ginnuth was not liable personally
for the said taxes, he not having become the owner of the
land until after January 1, 1882. This being true, we
think the lien provided by the constitution attaches at
the time the liability is fixed by the statute, and is
an incumbrance upon the land, though the amount of the
taxes is not then fixed and determined. The case of
Harrington v. Hilliard, 27 Mich 271, is seemingly in con-
flict with the rule here announced, but it is to be ob-
served that the statute upon which that decision was made
is essentially different from ours. The case of Rundell
v. Lakey, 40 N. Y. 517, seems more in point. In that case
Grover, J., said: 'It follows that at the time of the con-
veyance of the farm by the defendants to the plaintiff,
the former, in consequence of their ownership, had become
liable for the payment of the tax for the current year.

Hon. Paul Holt, page 11

That the time when they became so liable was the time of the completion and delivery of the rolls, although the amount of the tax was not ascertained and fixed for two months, yet the foundation of the liability was complete. They owned the property at the time fixed by law for determining who should be taxed therefor as owner. True, if the tax had not been paid, the land might have been sold to satisfy it. But this would have been a sale to satisfy a liability of the former owner, which he had failed to discharge, and which the law makes a lien upon the land to prevent the loss of the tax to the public.'

"Under our system the tax is levied on the 1st day of January of each year, and the assessment is made as of that date, although the rendering or listing and valuation of the property is in fact subsequently made. . . ." (Emphasis supplied)

Unless the amendment to Article 7151, noted above, justifies now a different conclusion from that reached in our opinion No. O-4749, we must of necessity hold that the amendment added by Senate Bill No. 126 is unconstitutional. We are not prepared to hold that this amendment alters the rule announced in our former opinion No. O-4749.

Senate Bill No. 126 did not become effective until April 7, 1943, and thus if the conclusions expressed above be correct, this amendment to Article 7151 operates as a release or forgiveness to the owner of the property as of the effective date for the 1943 taxes, and for prior and subsequent years under similar facts and circumstances, and is in violation of Article VIII, Section 10, supra, of our Constitution.

It is further observed that this amendment provides that the owner shall be liable for taxes only up to the time that the United States Government may take an option to buy, or up to the time that he may make an agreement to sell to the United States Government, neither of which creates the element of ownership, and under such contingencies the private owner would still be the owner of the property as of January 1. There is no separable or saving clause in the Act,

Hon. Paul Holt, page 12

and we are inclined to the view that this alone would render the amendment invalid and inoperative. Be that as it may, we are satisfied with our conclusions expressed, independent of this comment.

Obviously with the view of relieving this amendment of the possibility of running counter to Section 10 of Article VIII of our Constitution, it is declared in the emergency clause that the situation prompting the legislation creates and constitutes a public calamity, and creates and constitutes a public calamity to those counties, towns and villages in which such condemnations have been made necessary, and are necessary, and which will be made necessary by reason of the pursuance of the present War by the United States Government.

We think it too clear for argument that the type of calamity in the minds of the framers of the Constitution is not that type declared in this Act. We are unable to conceive how the condemnation of property by legal process and procedure or by voluntary sale by the owner creates a public calamity. The loss or calamity, if any, is to the individual owner and not to the county or political sub-division thereof in which the land may be located. We do not think that private rights may be made the subject of the calamity in the view of the framers of our Constitution in inserting the calamity provision as an exception under which the Legislature might forgive or remit taxes. We think the exemption expressed in the Constitution has to do with the results from natural laws and not by the agency of man. This is borne out in the case of Jones v. Williams, 45 S. W. (2d) 130, from which we quote as follows:

"We are constrained to believe that the calamities contemplated by the Constitution are those brought about by natural causes . . .

". . . It is clear that the type of public calamity within the meaning of the language employed is one due to natural causes. . .

". . . It may be said that the legislative construction and interpretation of this constitutional provision, like the history of its adoption, supports

Hon. Paul Holt, page 13

the conclusion as to its meaning which we have pre-
viously stated, that is, that a 'great public calamity'
within the meaning of the Constitution must be one
having its origin in vis major or Act of God. . . ."

Therefore, it is our view that this declaration adds nothing
to its immunity from whatever constitutional objection may
be validly levied against this Act.

Furthermore, we are of the opinion that S. B. 126
violates Section 2 of Article VIII of the Constitution of
this State, said section is as follows:

". . . the legislature may, by general laws, exempt
from taxation public property used for public purposes;
actual places or (of) religious worship, also any property
owned by a church or by a strictly religious society for
the exclusive use as a dwelling place for the ministry of
such church or religious society, and which yields no
revenue whatever to such church or religious society;
provided that such exemption shall not extend to more
property than is reasonably necessary for a dwelling
place and in no event more than one acre of land; places
of burial not held for private or corporate profit; all
buildings used exclusively and owned by persons or associa-
tions of persons for school purposes and the necessary
furniture of all schools and property used exclusively
and reasonably necessary in conducting any association
engaged in promoting the religious, educational and
physical development of boys, girls, young men or young
women operating under a State or National organization
of like character; also the endowment funds of such
institutions of learning and religion not used with a
view to profit; and when the same are invested in bonds
or mortgages, or in land or other property which has
been and shall hereafter be bought in by such institu-
tions under foreclosure sales made to satisfy or protect
such bonds or mortgages, that such exemption of such land
and property shall continue only for two years after the
purchase of the same at such sale by such institutions
and no longer, and institutions of purely public charity;
and all laws exempting property from taxation other than
the property above mentioned shall be null and void."
(Emphasis supplied)

The manifest purpose of this bill is to exempt certain property from taxation under the circumstances therein provided, and unless it is specifically mentioned in Section 2, Article VIII, quoted above, any attempt of the Legislature to exempt it from taxation is under the express terms of this provision of the Constitution null and void. Observe that the Constitution does not mention property acquired by the United States Government under the contingencies mentioned in this Act as a subject for legislative exemption from taxation. Hence it falls within the classification of "and all laws exempting property from taxation other than the property above mentioned shall be null and void."

We are further inclined to the view that this bill violates Section 1 of Article VIII of the Constitution, the Equal and Uniform Provision, but we pretermit a discussion of this as the other provisions of the Constitution discussed by us afford sufficient grounds for the conclusions reached.

We are therefore constrained to hold that H. B. No. 635 is not unconstitutional, but that S. B. No. 126, which amends Article 7151, R. V. S. C., is unconstitutional.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        L. P. Loller
          Assistant

LPL:AMM       APPROVED JUN 16, 1943
Gerald C. Mann

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN